JAMES SCHWALL, RESPONDENT, v. DELAWARE, LACKA-
WANNA AND WESTERN R. R. CO., APPELLANT.

Submitted July 8, 1918—Decided November 18, 1918.

Plaintiff, an employe of a firm of truckers, was injured in the freight yard of the defendant company, while engaged in unloading a heavy piece of machinery from a gondola car. The evidence at the trial on an action brought to recover damages for the injuries showed that to move the machinery from the car to a truck, the plaintiff and his fellow employes deemed it necessary to let down one end of the car, called a door or gate, which was held in place by U-bolts or hinges at the bottom on the inside of the car, and by clamps at the top on the outside; and that the door fell on the plaintiff, apparently because the clamps were not fastened. *Held*, that in the absence of testimony that this situation existed at the time the car was turned over for unloading by the defendant company, there was nothing to show negligence on its part.

On appeal from the Supreme Court.

The plaintiff on September 1st, 1916, was in the employ of truckers who had been engaged to transport a smelting furnace—a heavy piece of machinery—from the railroad station at Harrison, New Jersey, to the Electric Company's works. The furnace had been delivered to the defendant on a gondola car of the Pennsylvania Railroad Company at Buffalo, New York, and transported by the defendant to Harrison. By the schedules filed with the interstate commerce commission, the owners were required to load and unload heavy or bulky freight, carried at L. C. L. ratings, that cannot be handled by the regular station employes. It is not questioned that the furnace came within this rule. After an examination of the car with its load, on August 31st, by one of their employes, the truckers sent men on the morning of September 1st to transport the furnace. The men got in the gondola car and began preparations with that object in view. To move the furnace to their truck it was necessary or advisable to let down one end of the gondola, called a door

or gate. How far the preparations had gone before the accident was disputed. One witness testified that he had released the clamps or latches which hold the door. The plaintiff testified, and there was no contradiction, that if the clamp had been properly locked on the outside, the door or gate would never have come down. In fact the door fell on the plaintiff and injured him, falling toward the inside of the car "in the proper manner," "like a door would fall if it had been hinged properly in the car, or let down properly in the car," as the plaintiff testified. When everything was in proper condition the door was secured by U-bolts at the bottom on the inside of the car, and by clamps (or latches) at the top on the outside of the car. After the accident it was seen that the U-bolts, sometimes called hinges, were not in place, or perhaps were altogether missing. The negligence complained of was that the so-called hinges were in a defective and deteriorated condition. The questions submitted by the learned trial judge to the jury were: (1) Were the hinges in a defective condition? (2) Did that fact occasion the fall of the door? (3) Did the company, under the circumstances, have a duty of inspection for the purpose of remedying any defects that might naturally be injurious to any persons who were rightfully on the car? The jury found for the plaintiff.

For the respondent, *Pomerehne & Laible.*

For the appellant, *Frederic B. Scott.*

The opinion of the court was delivered by

SWAYZE, J. If we assume in favor of the plaintiff that the obligation of the railroad company to inspect continued after the trucker's foreman examined the car on August 31st, the question still remains whether the cause of the accident was any defect that existed prior to the time when· the possession of the car was finally·turned over to the truckers on the morning of September 1st. If not, the railroad company was not liable. If we assume that there was evidence that the hinges were out of place when the car was turned over to the truck-

ers, it would be impossible to find a causal connection between the lack of hinges and the plaintiff's injury in view of the uncontradicted evidence of the plaintiff himself that if the door had been properly locked on the outside with the clamps it would never have come down. This was necessarily so, since if the door had thus been secured at the top on the outside, it could never have fallen inward on the lower edge as a hinge in the way in which it in fact fell. We must conclude that the accident was due to the fact that the clamps were not fastened. This might or might not be evidence of negligence under certain circumstances.

We may, in favor of the plaintiff, treat the case as if this had been averred as negligence in the complaint. The real difficulty is not one of pleading, but one of evidence. Assume further in favor of the plaintiff that there were circumstances which might be evidence of negligence, although the very object of the plaintiff's employers and associates was to release the clamps so that the door might fall and permit the removal of the furnace from the car; we are still short of any evidence that this situation existed when the car was turned over by the railroad company to the truckers. All the evidence is to the contrary. No one but Reed testifies on the subject. He was an employe of the truckers and says he had released the latches (clamps) in order to take out the door so as to permit the removal of the furnace from the car. If his testimony is rejected, as the jury is said to have rejected it, there is no evidence of negligence on the part of the railroad company. If his testimony is accepted, it requires a verdict in favor of the railroad company, as the learned trial judge charged. In either view the case should not have gone to the jury.

We have assumed, but must not be understood as deciding, that it was incumbent on the railroad company to exercise more care in inspection than it in fact exercised. A decision of that question is unnecessary in view of the facts.

Let the judgment be reversed to the end that there may be a *venire de novo*.

*For affirmance*—MINTURN, J.  1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.  13.